UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Freddie Harris,

                              Plaintiff,

                                                        **Hon. Hugh B. Scott**

                                                        03CV467
                                                        Consent

                              v.                        **Decision
                                                        &
                                                        Order**


Deputy Aidala, et al.,

                              Defendants.

_____

        Before the Court are the parties' respective motions for summary judgment (Docket Nos.

45 and 48).


## Background

        Plaintiff, Freddie Harris ("Harris") brings this action under 42 U.S.C. §1983 claiming that

his Eighth Amendment rights were violated based on the defendants' alleged failure to protect

him from an attack by another inmate.  More specifically, in his Amended Complaint Harris

claims that he spent several days in the Special Housing Unit ("SHU") at the Five Points

Correctional Facility ("Five Points") based upon his refusal to "lock in" with a cell-mate he "was

having problems with." (Docket No. 29, Statement of Claim, ¶ 1).   It appears undisputed that all

cells at Five Points are double cells.  Upon leaving SHU on December 5, 2002, Harris was

assigned to share a cell with another inmate, Juan Yepez.  On January 27, 2003, Yepez assaulted

1

Harris with a sharp pair of altered tweezers. (Docket No. 29, Statement of Claim at ¶ 1-2).

Corrections Officer J. Villeneuve (who is not a defendant here) witnessed Yepez striking Harris;

ordered Yepez to stop the assault, Yepez complied; Villeneuve ordered the cell door opened and

recovered the tweezers used by Yepez in the attack.  (Docket No. 35 at Bates Number 001, 005).

 The documentary evidence in the record reflects that Harris suffered minor laceration in front of

his left ear as a result of the attack. (Docket No. 35 at Bates Number 004, 0016-0018).

Harris contends that he was assigned to the cell by Deputy Superintendent of Security

Aidala and that the assignment placed him in danger in violation of his Eighth Amendment

rights.  Further, shortly after the attack on January 27, 2003, Harris contends while he was on his

way to the infirmary he overheard Correctional Lieutenant Ficchi ("Ficchi") and Correctional

Sergeant Piccolo ("Piccolo") "mocking" him about the fact that Yepez had assaulted other

inmates. The plaintiff contends that these unspecified comments were captured on

 videotape,[1] and constitute a violation of his rights by Ficchi and Piccolo. (Docket No. 29,

Statement of Claim at ¶ 1).

---

[1]	The plaintiff sought to obtain a copy of the alleged videotape in discovery. The defendants produced a videotape related to the incident of January 27, 2003, but noted that the videotape did not contain footage of Piccolo and Ficchi having the discussion alleged by the plaintiff. The defendants represented that there "is no other videotape regarding the January 27, 2003 incident." (Docket No. 39 at ¶ 30). The record also includes a Memorandum from Corrections Captain J. Bellnier to Aidala dated March 12, 2003 regarding Harris' allegations concerning Ficchi and Piccolo.  Bellnier states that he advised Harris that the camera in the corridor where the alleged comments between Ficchi and Piccolo were to have been exchanged does not record audio.  Bellnier also advised Harris that because Harris did not file any grievance putting the facility on notice of any claim against Ficchi and Piccolo within the 14 day time limit, the video of Ficchi and Piccolo proceeding down the corridor was "recycled."  (Docket No. 35 at Bates Number 22-23).  Harris has failed to present the Court with any basis whatsoever to dispute the defendants representations in this regard.

**Discussion**

**Failure to Exhaust Administrative Remedy**

The defendants assert that the instant complaint must be dismissed based upon the plaintiff's failure to file a timely grievance relating to the claims in this case. The plaintiff acknowledges that prior to filing any administrative grievance regarding his claims in this matter, he commenced a previous action in this Court based upon an  alleged failure to protect hm regarding the assault on January 27, 2003. (Docket No. 29, Statement of Claim at ¶ 4).  In that case, Harris v. Aidala, 03CV132 (W.D.N.Y.), the complaint was dismissed without prejudice based upon a failure to exhaust administrative remedies.  (Id.; *see also* 03CV132 at Docket No. 3).

Harris further acknowledges that he first filed a grievance based upon the alleged failure to protect him from an attack by Yepez on March 5, 2003. A copy of that grievance is attached as an exhibit to the Amended Complaint (Docket No. 29).  Harris' grievance was denied on March 6, 2003 based, in part, upon a finding that an "investigation did not reveal any liability for your injuries owning to negligence by any employee."  The record reflects that Harris further appealed this grievance to the Central Office Review Committee ("CORC") which denied the appeal on May 22, 2003 again based, in part, upon findings by CORC that: the facility conducted a proper investigation; that Harris failed to present sufficient evidence to support claim of malfeasance by the correctional officers; that an investigation reflected that Harris gave no prior notice of any alleged problems with Yepez prior to the altercation. (Copies of the Initial Denial, and CORC

denial of appeal are attached to the Amended Complaint, Docket No. 29).  The documents do not reflect that the denial of the grievance was based, even in part, upon that fact that Harris' filing was untimely.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Second Circuit has stated that "prisoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred." Giano v. Goord, 380 F.3d 670, 677 (2d Cir.2004); Williams v. Comstock, 425 F.3d 175, 176 (2d. Cir. 2005). However, as noted above, Harris did file a grievance.  The defendants do not assert that the grievance filed by Harris did not encompass the claims asserted in the Amended Complaint pending before this Court. Even though the grievance was filed outside the stated time parameters for the filing of grievances, it appears that the grievance was processed and denied based upon the merits, not upon a procedural default. Under such circumstances, it does not appear that Harris circumvented the exhaustion requirement.  Inasmuch as Harris' grievance was processed and considered on the merits, the plaintiff exhausted his administrative remedies.

**Eighth Amendment Claim**

It is settled that, under the Eighth Amendment, "prison officials have a duty ⋯ to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833,

114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842

F.2d 556, 558 (1st Cir.1988)). In *Farmer,* the Supreme Court set out the two-pronged test that

determines when a failure to protect a prison inmate from assault by other inmates rises to the

level of a constitutional violation. First, the prisoner must have been "incarcerated under

conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the prison official must

have shown "deliberate indifference" to the prisoner's safety. *Id.* Deliberate indifference exists

when "the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." *Id.* at 837; Hines v. Lacy, 189

F.3d 460 (2d Cir.1999).

It is equally well-settled that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v.

Smith, 21 F.3d 496, 501 (2d Cir.1994). Plaintiff must allege a "tangible connection between the

acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

The Court must determine whether a question of fact exists as to any personal involvement of

defendants Aidala, Ficchi or Piccolo regarding a threat to Harris' safety prior to January 27, 2003

assault.

**Aidala**

It is undisputed that Aidala was the Deputy Superintendent of Security at Five Points at

the time Harris was assigned to bunk with Yepez.  It appears that it was Aidala's determination

to place Harris in the cell with Yepez.[2]   The undisputed record in this case reflects that Five Points is a completely double-celled facility (Docket No. 51 at ¶ 5) and that Harris did not object to being placed in a double cell. (Docket No. 51, Exhibit E at page 5).   Pursuant to the applicable directives, among other things, the Deputy of Security is required to consider the following factors in making a determination regarding double-celling: inmates age, health, mental status, if the inmate had a pattern of predatory assaults by the use of contraband or where the assault resulted in serious injury; if the inmate has a extremely violent criminal history; and any homosexual behavior.   (Department of Correctional Services ("DOCS") Administrative Directive No. 4003, §1701).   The Deputy Superintendent of Security is also required to perform a compatibility assessment using the following criteria: religious background, age, language, size, criminal history, length of stay, and known enemies. DOCS Administrative Directive No. 4003, §1701.5(d).

It appears undisputed that, although Yepez and Harris had been bunking together for almost two months, at no time prior to the January 27, 2003 incident did Harris advise anyone that he had reason to believe that Yepez would attack him.

Liberally construing the allegations in the Amended Complaint, Harris asserts that Yepez had a pattern of predatory assaults against his cell-mates. Harris' allegations do not implicate the other factors noted above.   However, the plaintiff has not presented any evidence, other than his

---

[2]   Aidala does not confirm or deny that he made the decision to place Harris with Yepez. In a Declaration dated August 16, 2006, Aidala states that due to a stroke he suffered in the summer of 2004, he no longer has any recollection of the events or incident on January 27, 2003. (Docket No. 49 at ¶ 4).

own unsubstantiated testimony, that Yepez had a pattern of predatory assaults on other inmates

or assaults which resulted in serious physical injury on any one victim.  The record reflects that

Yepez had been involved in three other fights with cell-mates.  In the first incident, on April 25,

2002, it appears that Yepez was attached from behind by inmate Kent Powe (Docket No. 40 at

Bates No. 38).  A weapon was not used and neither inmate sustained a serious injury. (Docket

No. 40 at Bates No. 39).  The second incident, which occurred on October 31, 2002, involved a

fight between Yepez and inmate C. Mateo.  Once again, no weapon was used and no serious

injuries were sustained. The Fight Investigation Report concluded that the two inmates did not

get along, but that it was uncertain as to "who the aggressor was." (Docket No. 40 at Bates No.

49).  The third incident involved an attack by Yepez on a cell mate named John Duncan.  Yepez

claimed that Duncan was a homosexual and that he did not want to bunk with Duncan.  Again,

no weapon was used and no serious injury was sustained by either inmate. (Docket No. 40 at

Bates Nos. 58-59).  Thus, the record in this case demonstrates, as a matter of law, that at the time

Aidala made the determination to place Harris in a cell with Yepez, Yepez did not have a history

of using contraband weapons to attack other inmates or a record of predatory assaults resulting in

serious injuries to other inmates.  Indeed, Yepez was clearly the aggressor in only one of the prior

incidents. This does not establish a pattern.  Harris has not offered any evidence that Yepez was

involved in any specific incident other than those disclosed by the defendants in this case.

Harris also argues that Yepez was not an appropriate candidate for double bunking

because he has an "extremely violent" criminal history.  (Docket No. 60 at page 9).  The record

reflects that Yepez was convicted of manslaughter for having stabbed his mother to death.

(Docket No. 52 at page 6).  The record does not reflect any prior convictions of Yepez.   The

plaintiff has not presented any authority supporting the proposition that a single manslaughter

conviction constitutes the type of extremely violent criminal history which would preclude Yepez

from double bunking under the applicable standard.  The Court notes that  Harris also has a

violent criminal record, having been convicted of raping a thirteen year old girl. (Docket No. 51

at page 20). Yepez' manslaughter conviction would not present a basis, by itself, to conclude that

a substantial risk existed that Yepez would attack his cell-mates. As discussed above, a pattern of

such attacks did not exist at the time Aidala made the determination to bunk Harris and Yepez.

Further, the record does not reflect evidence of any other personal characteristic of either Yepez

or Harris which would have put Aidala on notice that the two were not compatible for double

bunking purposes.

Harris has not presented evidence establishing a factual question as to whether Aidala

was aware of facts from which the inference could be drawn that a substantial risk of serious

harm existed, and that Aidala also drew such an inference but disregarded it. Farmer, 511 U.S. at

837; Hines v. Lacy, 189 F.3d 460 (2d Cir.1999).  Based on the above, Aidala's motion for

summary judgment is granted.


**Ficchi and Piccolo**

Harris' claims against Ficchi and Piccolo must also fail.  Harris claims that Ficchi and

Piccolo made unspecified mocking comments reflecting knowledge that Yepez was involved in

prior incidents with various cell mates.  Harris further contends that these comments were

captured on a video tape and that the defendants are improperly refusing to produce that video

tape.  As noted above, the defendants have represented that the tape does not exist, and that the video camera at issue does not record audio.  Thus, any such comments would not have been recorded.  Also as noted above,  Ficchi and Piccolo deny making any such comments.  In any event, this factual question is immaterial to the claims presented by Harris.

It is undisputed that neither Ficchi nor Piccolo were personally involved in the determination to assign Harris to bunk with Yepez.  It is also undisputed that neither Ficchi, nor Piccolo had the authority to challenge or reverse Aidala's decision to place Harris in the cell with Yepez.  The only action Ficchi and Piccolo could take with respect to Harris' cell assignment would have been to advise Aidala that some security risk not already known to Aidala was created by placing Harris in the cell with Yepez.  The plaintiff has not established that Ficchi or Piccolo possessed any information regarding Yepez or Harris that was not already known by Aidala.   Significantly, although he had been bunking with Yepez for two months prior to the attack, Harris does not contend that he made any statements to Ficchi or Piccolo (or Aidala for that matter) indicating that he feared for his safety from Yepez.  Thus, the plaintiff has failed to raise a factual question that either Ficchi or Piccolo possessed information not possessed by Aidala relevant to the determination to place Harris in a cell with Yepez.   Inasmuch as Ficchi and Piccolo were not personally involved with Harris' cell assignment, they cannot be held liable for that determination. Absent knowledge of any specific threat to Harris prior to the attack by Yepez, the plaintiff has failed to assert facts from which a trier of fact could find that Ficchi and/or Piccolo were deliberately indifferent to a substantial risk of serious harm to Harris.

Based on the above, the defendants' motion for summary judgment is granted.

9

**Conclusion**

The plaintiff's motion for summary judgment  (Docket No. 45 ) is DENIED and the defendants' motion for summary judgment (Docket No. 48 ) is GRANTED.  The Amended Complaint is dismissed.  The Clerk is directed to enter judgement in favor of all defendants and close this case.

So Ordered.


_____/s/ Hugh B. Scott_____
United States Magistrate Judge
Western District of New York

Buffalo, New York
September 6, 2006